IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN LEE FISHER,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | No. 2:22-CV-1615-DMC<br><br><br><br>MEMORANDUM OPINION AND ORDER |

      Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 7, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c); see also ECF No. 15 (minute order reassigning case to Magistrate Judge). Pending before the Court are the parties' briefs on the merits, ECF Nos. 14 and 20.

      The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

| | | |
|---|---|---|
| Step 1 | | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

|   |   |   |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on March 22, 2020.  See CAR 15.[1]  In the application, Plaintiff claims disability began on March 25, 2019.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on January 5, 2021, before Administrative Law Judge (ALJ) David LaBarre.  Following the hearing, the ALJ received additional evidence from post-hearing consultative examinations.  See id.  In a June 16, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): chronic liver disease; type two diabetes mellitus; alcoholic cirrhosis of the liver; peripheral neuropathy; and cellulitis of the right lower limb;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work; the claimant can frequently lift or carry ten pounds, occasionally lift or carry twenty pounds, sit for up to six hours, and stand/walk for two hours in an eight-hour workday with normal breaks; the claimant should never climb ladders, ropes, and scaffolds; the claimant can occasionally climb ramps and stairs; the claimant can occasionally balance, stoop, kneel, crouch, and crawl; the claimant is able to work in environments where there is no concentrated exposure to extreme cold, wetness, or vibration; the claimant can perform work in environments where there is no more than moderate exposure to heavy machinery; the claimant can never work around heights; the claimant can perform occasional pushing and/or pulling with the bilateral lower extremities; the claimant can frequently feel and handle bilaterally;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, and the Medical-Vocational Guidelines there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 15-28.

After the Appeals Council declined review on August 9, 2022, this appeal followed.

///

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on December 22, 2022, ECF No. 9.

## III.  DISCUSSION

In his motion for summary judgment, Plaintiff argues: (1) the ALJ erred at Step 4 in evaluating Plaintiff's subjective statements and testimony; and (2) the ALJ erred at Step 5 in determining that Plaintiff can perform other jobs.

### A.    **Evaluation of Plaintiff's Subjective Statements and Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

///

///

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable

1   to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

2   before relying on daily activities to discount a claimant's pain testimony.  See Burch v. Barnhart,

3   400 F.3d 676, 681 (9th Cir. 2005).

4         At Step 4, the ALJ evaluated Plaintiff's subjective statements and testimony.  See

5   CAR 21-24.  The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant alleged disability due to type two diabetes with hyperglycemia and peripheral neuropathy, as well as anemia. He complained of tingling, numbness, and stiffness in his bilateral hands and fingers with burning sensation, redness, and sensitivity to touch. He complained of jaundice and cirrhosis of the liver. He reported neuropathy in all extremities. He complained of difficulty gripping with his hand well enough to write clearly. He complained of dizziness and balance deficits. He reported the use of a non-prescribed cane. He reported pain in his feet that make it difficult to walk. He reported he was unable to walk without diabetic slippers or shoes. He reported he could sit for fifteen minutes before needing to change positions because his legs and feet fall asleep. He indicated he had to move his legs around to shake off the numbness. He reported the use of compression socks and elevation of his feet. He reported difficulty bending his left wrist. He reported poor penmanship due to difficulty gripping with his right hand. He indicated he used talking to text on his phone. He reported disturbed sleep at night because he had to keep shaking his feet. He indicated he elevated his feet four to five times a day above the waist level to reduce edema. He reported he assisted in the care of his toddler daughter when his wife was at work, but he indicated he did not feel comfortable taking full responsibility for her care and utilized assistance from his wife's parents to care for her. (Exhibits 1E; 5E; 7E; Hearing testimony)

CAR 22.

The ALJ then continued by separately discussing, in turn, the objective medical evidence as to Plaintiff's diabetes mellitus, CAR 22-23, Plaintiff's chronic liver disease with alcoholic cirrhosis, CAR 23-24, and Plaintiff's cellulitis of the right lower limb, CAR 24.  The Court does not repeat the ALJ's extensive discussion here.

      The ALJ concluded Plaintiff's statements and testimony are not "entirely consistent" with the medical evidence.  See id. at 24.  The ALJ reasoned as follows:

> . . . The record does reflect severe liver disease with improvement over time. Some standing and walking limitations are supported by the record. The record reflects the claimant's diabetes was poorly controlled for most of the applicable period. The medical record also reflects consistent complaints of burning pain, numbness, and reduced sensation in his extremities to his treatment providers. However, the record does not indicate he reported that he had difficulty gripping items. Further, physical

7

examinations showed he exhibited a normal grip. Electromyography and nerve conduction testing did show severe neuropathy. However, the record does not support the medical need for a cane or other assistive device. The record indicated the claimant ambulated with a front wheeled walker during a flare of his cellulitis. However, abnormal findings on physical examination showed some reduced range of motion and strength in his feet, particularly his toes, with some absent reflexes in his lower extremities, as well as loss of sensation. However, physical examinations also showed the claimant was able to perform a heel walk and ambulate without the use of an assistive device. He generally exhibited normal motor strength with the exception of his toes. Although the claimant reported at the hearing that he had the assistance of parents to care for his daughter when his wife was working, treatment records indicated he reported his most strenuous exercise was taking care of his toddler daughter while his wife worked. He also reported the use of a stationary bike for exercise. Although the claimant indicated he elevated his feet four to five times a day above waist level to reduce his edema, the medical record does not support the need for such elevation. The claimant was prescribed diuretics to treat his edema. In the absence of flares of his cellulitis, physical examinations showed his edema was controlled while taking diuretics. The claimant reported he was able to dress himself, perform his own hygiene, wash dishes, shop with accompaniment, and ride a bicycle. At his consultative physical examination he exhibited normal muscle mass in the right upper and bilateral lower extremities with no evidence of skin tags, skin lesions, or evidence of jaundice. He was able to transfer from a chair to the examination table and sit comfortably. He exhibited normal motor strength in the bilateral upper and lower extremities, including grip strength. His gait was mildly antalgic without the use of an assistive device. The claimant has received some treatment for the allegedly disabling impairments, but that treatment has been essentially routine or conservative in nature and consisted primarily of medication.

CAR 24-25.

From this analysis, it is possible to discern three reasons cited by the ALJ for discounting Plaintiff's subjective statements and testimony. First, the ALJ appears to conclude that Plaintiff's statements and testimony are not consistent with various portions of the objective medical evidence. Second, the ALJ cites some of Plaintiff's daily activities which purport to show that Plaintiff is not as limited as he alleges. Third, the ALJ states that Plaintiff's testimony is undermined by a history of "routine or conservative" treatment.

At the outset, the Court finds that the ALJ's analysis is flawed because, while the Court is able to determine reasons for discounting Plaintiff's subjective statements and testimony, the ALJ has not specifically identified which portions of Plaintiff's testimony are undermined by which specific pieces of the objective record. In this regard, the Court cannot guess at what the

ALJ's analysis would have been or substitute defense counsel's analysis, even if it is sound and supported by substantial evidence. With respect to the ALJ's reliance on Plaintiff's daily activities (caring for his daughter during the work-day with assistance, dress, wash dishes, shop with accompaniment, ride a bicycle), the ALJ has not explained how such activities show an ability to sustain work on a full-time competitive basis. Finally, while Plaintiff's various impairments were primarily treated with medication, such medication included IV treatments and pain medication, which the Court cannot say is either routine or conservative, particularly in light of the extensive treatment and the care he has been provided, which includes ER visits, which Plaintiff has sought over the years.

### B.     Vocational Findings

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d

1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, after taking testimony from a vocational expert, the ALJ concluded that Plaintiff can perform other jobs which exist in the national economy. See CAR 27-28. Based on Plaintiff's residual functional capacity and other vocational guidelines, the vocational expert testified that Plaintiff can perform representative jobs as document preparer (19,000 jobs available), addresser (2,700 jobs available), and call-out operator (3,000 jobs available), all of which are unskilled sedentary jobs. See id. The ALJ further commented as follows with respect to application of the Grids and consistency with the Dictionary of Occupational Titles (DOT):

> As the only jobs identified by the vocational expert fell within a sedentary exertional level, the undersigned applied Medical-Vocation Rule 201.28. If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the DOT. The undersigned further finds that the

vocational expert's testimony is consistent with the information contained in the DOT and to the extent the DOT does not address a particular limitation, the testimony was based on the vocational expert's experience (Exhibit 12E). The undersigned accepts this testimony in accordance with SSR 00-4p.

CAR 28.

Plaintiff argues: "In this case, the jobs relied upon by the ALJ at step five are obsolete and/or do not exist in significant numbers in the national economy." ECF No. 14, pg. 14. According to Plaintiff:

> The occupation of addresser is a relic of the past. In *Skinner v. Berryhill*, the court found that "it is not unreasonable to assume that the occupation of 'addresser,' which—as described by the DOT—provides for addressing envelopes by hand or by typewriter, is an occupation that has significantly dwindled in number since 1991 in light of technological advances." *Skinner v. Berryhill*, No. CV 17-3795-PLA, 2018 WL 1631275, at *6 (C.D. Cal. Apr. 2, 2018). The occupation of addresser also does not have an equal counterpart in the O*NET. *See Scott v. Colvin*, No. 14-CV-04051-EDL, 2015 WL 11438598, at *13 (N.D. Cal. Dec. 9, 2015) (finding the occupation of cutter/paster, press clippings does not exist in significant numbers, in part, because there is not a similar position in O*NET). An addresser falls under the classification of Word Processors and Typists which requires significant use of computers and software; multiple clerical job duties; and is semi-skilled. [footnote omitted]. The VE testified that there are 2,700 national full-time positions. (AR 61). Given the technological advances since 1991 when the DOT was last updated and a common sense understanding of the addresser definition, substantial evidence does not support that the job of addresser exists in the national economy. Jobs that are "very rare" or "generally unavailable" cannot be held to exist in significant numbers. *Walker v. Mathews*, 546 F.2d 814, 820 (9th Cir. 1976).
> The VE relied on a total of 24,700 jobs to find that Plaintiff can perform work which exists in significant numbers in the national economy. Subtracting the obsolete position of addresser (2,700 jobs nationally), only 22,000 jobs remain as the basis for the ALJ's finding at step five. Ninth Circuit case law directs that the ALJ must establish that at least 25,000 jobs exist in the national economy that a claimant can perform to show that a "significant number" of jobs exist. *Gutierrez*, 740 F.3d at 529 ("Under our current case law, the ALJ's finding that 25,000 national jobs is sufficient presents a close call."). Therefore, it is highly questionable that either 22,000 or 24,700 jobs constitutes a significant number of jobs in the national economy. As a result, the Commissioner has failed to meet the burden to show that Plaintiff can perform work which exists in significant numbers in the national economy.

ECF No. 14, pgs. 14-15.

/ / /

/ / /

Defendant essentially concedes Plaintiff's first point and argues that the remining number of jobs – 24,700 – satisfies the Commissioner's burden at Step 5. See ECF No. 20, pgs. 27-29. According to Defendant:

> Even if Plaintiff is correct that the occupation of Addresser is obsolete (see P. Br. 14), any error in relying on such occupation would be harmless. See Buck v. Berryhill, 869 F.3d 1040, 1051, 1051 n.2 (9th Cir. 2017) (error in relying on occupation may be harmless if significant number of jobs exist in national economy in remaining cited occupation(s)). Here, the 22,000 remaining jobs (when the 2,700 of the total jobs represented by the Addresser occupation are subtracted) fall well within job numbers found acceptable in this Circuit—indeed this Court recently noted that "[t]his Court and others in this Circuit have . . . determined that 14,000 or more jobs are a 'significant number' in the national economy." Woodworth v. Kijakazi, No. 1:21-cv-00159-SKO, 2022 WL 17542420, at *7 (E.D. Cal. Dec. 8, 2022) (citing cases); see, e.g., Montalbo v. Colvin, 231 F. Supp. 3d 846, 863 (D. Haw. 2017) (finding 12,300 jobs to be significant number); Woodworth, 2022 WL 17542420, at *7 (finding that error in considering certain occupations was harmless because remaining occupation had 20,700 jobs in national economy); Kimberly T. v. Kijakazi, No. 3:20-cv-1543-SI, 2022 WL 910083, at *8 (D. Or. Mar. 29, 2022) (concluding that asserted error in determining ability to perform occupation was harmless because 15,000 national jobs in remaining occupation was significant); see also De Rivera, 710 F. App'x at 769 (finding it "not clear" whether 5,000 national jobs and/or 500 jobs in California were significant).

ECF No. 20, pgs. 27-29.

Defendant's argument is persuasive. The Court will accept Plaintiff's first argument and presume that the remaining number of jobs identified is 24,700. As the parties agree, the Ninth Circuit has stated that 25,000 jobs represents a "close call" on whether that number qualifies as a significant number at Step 5. However, in light of the other authorities cited by Defendant, which include cases where fewer total jobs constituted a significant number (affirming findings at Step 5 based on 20,700 jobs, 15,000 jobs, and 14,000 jobs), the Court finds that 24,700 falls on the permissible side of the "close call" line and represents a sufficient number to satisfy the Commissioner's burden at Step 5.

/ / /

/ / /

/ / /

/ / /

### IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 14, is granted;
2. Defendant's motion for summary judgment, ECF No. 20, is denied;
3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  December 5, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE